I'm William Berger on behalf of the petitioner, Mr. Bush. Could you speak up a little bit? I can. William Berger on behalf of the petitioner, Mr. Bush. Your Honor, I would like just to address, though numerous issues have been raised, there are several that I think I could address. The first one is the question of discrimination in dismissing the alternate juror. Why isn't it harmless, because the alternate wouldn't have been on the jury anyway? Well, Your Honor, that is the Nevius case, obviously, and I just do not think that the – I think we had a death penalty case where we said it was harmless in those circumstances. Nevius. Right. But Nevius was pre-Batson, wasn't it? Well – It relied on a pre-Batson. And also we've had some new standards. Let me speak up. I do mumble. We have had some new standards come out by the Supreme Court in the Johnson v. California case that, though I haven't – I'm sure this Court is very familiar with. The inference. And at the time of the selection of the jury, who is to know who is going to actually hear these cases, whether a alternate juror in a six-week, five-, six-week case? The prejudice runs not just against the defendant but against the excluded members of the pool. Precisely. And also it gives the impression, whether accurate or not, in actuality, that there is a taint on the system and that there is a discrimination occurring in the selection of the jury, even if the alternate juror is not called upon. How do you make a prima facie case here that we don't have anything about what went on other than we know that the trial court, when the objection was made that blacks, there weren't going to be any blacks on the jury because five had been excused for cause and then the alternate had been stricken, the trial court apparently went back and reviewed all the grounds for cause and found those to be, apparently found those to be sustainable. So all you have, as I read the record that's presented to the State Appellate Court, well, at least to us in any event, is that you have a single, a single black remaining on the jury was stricken. Now, we've got precedent in our circuit that says that alone is not enough. So what is, what more do you have? Your Honor, the record is what I, what we have. I mean, all we can talk about is the impression that this makes. There's six. I mean, that, we've already confronted that issue by saying simply because you can show the sole minority has been stricken doesn't in and of itself make it sufficient. So you need something more. You have something more here maybe that, you know, you argue that it's a case about race eventually. Yes. Is that enough to tip it into the... Your Honor, I think under the new standards, the inference, if there's that inference it begs the inquiry. And the trial court failed to make an inquiry about the reasons for the excusing of the alternate juror. I mean, in a vacuum, it may look, have appearances of things went very well, that things were appropriate. But when you look at it, in actuality, when you have five jurors being the only five black jurors being excused for cause, and then the sixth one being challenged preemptorily, it creates a situation where there's an appearance of impropriety. This happened to dovetail into a prosecutor's perhaps a plan. We just don't know. But you can't really insert the proper challenges for cause as a component, can you, of the, of what you look at, at the sixth person? Because, you know, that's happenstance, I guess, that each of them. Now, it's unfortunate, of course, that there are six. And it turns out that there are four cause reasons for the five. But can you somehow reflect that back into the considerations on the sixth one? Well, Your Honor, it would be my, I would posit to this Court that perhaps this advantageous development for the prosecutor in having these five black members stricken for cause, in the courtroom, I mean, it was unique that these were the five. I'm not following something. Yes, sir. Let me make it clear to you so you can educate me. This 2254 habeas, right? Yes, sir. So what the State did has to be contrary to or an unreasonable application of a Supreme Court decision, a holding a Supreme Court decision. I can't figure out, it looks to me like the argument is excusing the last black juror or possible juror, regardless of whether a racial reason is the cause of the peremptory challenge, violates Batson because it leaves the person with no black jurors. Now, Batson didn't say that. I can't think of any other Supreme Court case that said that. If you look at Ninth Circuit cases as interpreting Supreme Court cases, it's disputable whether you can or not in our court. I think right now the law is that you can. Then you look at Nebias, and Nebias says it's harmless error, that opinion by Judge Canby. I can't see that there's been any change in the law that's helpful to you, as opposed to changes that are harmful to your case since Nebias. I'm just not getting it. What Supreme Court opinion was the State decision contrary to or an unreasonable application of? Your Honor. It's like you need a new rule, which is you can't trump the last black juror unless it's for cause. What I would point out to this Court is I think it's the inference that was raised by the trial counsel. And whether it's coincidental, once he raises that inference and the potential juror is challenged and the court can see that there is an inference that may be considered, it may — it has a duty to inquire. For better or worse, we're stuck, are we not, with AEDPA and its tougher standards than had existed in the past. And that requires identification, does it not, of some Supreme Court decision, not only even a Ninth Circuit decision, that somehow calls for the result. Well, I think this Court can approach that question under the ruling of Johnson. We make up a Supreme Court decision. No, no, sir. But the new Supreme Court, Johnson v. California, could guide this Court in that determination. May I address a second issue that has been a concern to my client? You preserve them all. Address whichever you like. The other one that I would like to address is the prosecutor's comments in the closing argument that in this case, the court recalls that there were letters it allowed in over objection that were later interpreted. They were argued that it was an indication of gang-related activity when, in fact, the record seems to indicate that there was a large — there were other methods of proving that and there was documentation. In the end, these letters were introduced and the prosecutor commented on them. And I think there's an inference that if the client had taken the — if the defendant had taken the stand, that these letters were used in lieu of the defendant's testimony by the prosecution, when they had other alternative means to demonstrate gang affiliation, they were extremely prejudicial and they ended up being testimony by the defendant. And it was commented on that Mr. Bush's writings — I think it was improperly commented on that that was a — that commented on his failure to take the stand to explain those writings. You're arguing Griffin error? Please. You're arguing Griffin error? Yes, sir. And with those comments, I will — unless there's any other inquiries, I will retire here. Thank you, counsel. Thank you. May it please the Court, Douglas Danzig, Deputy Attorney General, on behalf of Respondent. I don't think Johnson adds much to the analysis, the recent Supreme Court case in Johnson. I think Judge Shader may have touched upon the key point here, and that is that we're talking about the first prong of a Batson analysis. We're simply talking about whether there was a reasonable inference that somehow would have required the trial court to require the prosecutor to make a race-neutral explanation. I think the trial judge said there was no prima facie case. That's correct. Is there anything I should look at in the excerpts to see whether there was or wasn't besides that comment? There's absolutely nothing other than the fact that the juror was peremptorily challenged. There's absolutely nothing else that leads into — or that contributes to the totality of the circumstance. Well, the totality does, doesn't it, because it wasn't racial bias being argued in this case. It is. It wasn't, indeed, the prosecutor's argument at the end of the trial, was that the letter from the defendant showed that this was racially motivated. It is a totality-of-the-circumstances test, but the fact that the prosecutor made very minimal reference to those letters in closing arguments certainly was not known to the trial court at the time the court had to consider the Batson-Wheeler challenge. So there was nothing at that time that's in the record that we know of where it was clear that the case was going to be a racial motivation as part of the murder? That's correct, Your Honor. Nothing surfaced in any part? No. And if, in fact, that became the concern of trial counsel, trial defense counsel, then there were other remedies available to them, to counsel and to a petitioner at that point. They could have moved for a mistrial. They could have moved for a new trial. But at this point, we're simply talking about the first prong of a Batson three-prong analogy. It's made a prima facie showing. Correct. And so there was absolutely nothing there. I think I recall which member of the court also touched upon, I think it was Judge Kleinfeld, that touched upon the other critical issue here, and that is that this is an AEDPA case, and there is absolutely no Supreme Court, any clear federal law, as articulated by the Supreme Court, holding that what happened in this case, or that the state court's evaluation of it, was contrary to any Supreme Court rule or could remotely be considered an objectively unreasonable application of the existing rules. We do have the new case of Johnson v. California, in which the Supreme Court has said that the test as articulated by California in Wheeler is an improper test and that it must be under the Batson analysis of a reasonable inference rather than reasonably probable. Well, that could suggest it was an unreasonable application. We also have Miller et al., which talks about the Batson. But both those cases are post this case. Well, they are post, but that's just their interpreting. So whether the California court should have been aware of the ramifications of Batson as clarified or whatever in subsequent cases, but to say there was absolutely nothing out there. There was Batson. It's adding an awful lot of trouble. The absolute worst it could be, you're saying, is contrary to the Supreme Court authority that the California court acted contrary to the Supreme Court authority that did not exist when it acted, but did subsequently. Correct. And even in addition to that, we do have the underlying case of People v. Johnson, in which the California Supreme Court said both standards are one and the same. So the California Supreme Court had construed the Wheeler test as similar to Batson. The Supreme Court has now come along and said, no, that language won't cut it. And so you've got to abide by the law. It could be a colorable case of unreasonable application. Pardon me? It could be a colorable case of unreasonable application, not a contrary to. There are two prongs. I agree, but I don't think. I understand. I'm not asking you to concede that it was, even though it was colorable perhaps. Correct. But that would be the more appropriate prong under the circumstances. Correct. And as to Petitioner's final point regarding Griffin there, I'm not sure I followed the argument, but the facts are that during closing argument, defense counsel made mention of the fact of he alluded to what the petitioner was thinking when he wrote the letters that were ultimately introduced. And in rebuttal, the prosecutor got up and said, counsel could not know what was going through the defendant's mind when he wrote those letters. There is simply no way to reasonably look at that and say that that is Griffin there, that that was somehow a comment on the defendant's failure to testify or urging the jury to draw an inference of guilt from it. Could I ask you, Nevis has been referred to here. Nevis was not decided under Batson even though Batson had come down at that point. Correct. Do you think Nevis is still good law now in light of Batson and Miller, Al, and Johnson? Yes, I do. So it doesn't make any difference if the alternate, whether it makes a difference, even if the alternate is stricken for racial reasons? Well, that's not the question to begin with. Nevis says it's harmless error because if the alternate never sits, then it doesn't count. And one of the questions that you posed to opposing counsel, or I can't say a question but a comment that you made was, well, the prejudice goes to both the dismissed juror as well as the defendant. That's true, or that may be true. That's what Miller, Al, says. But we still have the fact that no alternate juror sat on this case. So, therefore, a harmless error analysis is possible in this case. How can it be? Because if the injury is to the system of justice, the fact that a juror has been discriminated against racially and stricken from the jury pool doesn't make any difference whether they would have sat on the decision-making process. The harm for Miller, Al occurs because racial discrimination has occurred with respect to the struck juror. Regardless. Miller, Al does not hold that it's structural there. Well, I didn't say it was structural there. But I don't think you can say that, well, I won't even know, I'm not even sure about that. But in any event, I don't think you can say it goes away because the juror never wound up deliberating on the defendant's guilt. The juror was struck and never got to participate in the process. And wouldn't have. That's the harm. And would not have. And as we now know in hindsight, would not have participated. Oh, I sat on a murder jury, and there were two blacks who were the alternates. And one of them actually did get called, but the other did not. So they sat through the whole trial. For all they knew, they were participating. True. They would have participated in listening to the evidence. I think that's what Miller, Al suggests is the harm to them as potential jurors, whether or not they wind up sitting or not. Well, to be fully candid, I think Miller, Al is as close as I've ever seen in my experience to the Supreme Court conducting a rescue mission. Well, that may be, but, you know, there are bosses, too. I understand. Could you remind me of the wording? I'm trying to remember the wording. I think it's Rule 52 of the Federal Rules of Criminal Procedure that says we can't reverse for harmless error. But it has a little fancier language than that. I'm trying to remember. Does it mean harmless error that did not affect the defendant or error that just had no harm, no way, no how? I don't recall. Great. We have it on the bench, and I'll soon find out. Thank you, Judge. But would that rule not apply to an AEDPA analysis? No. I don't think so. But it would throw some light on what is meant by harmless error. But it would be bracked anyway. It doesn't throw much light. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. So what are substantial rights? Unless the Court has some other questions, I would just close with an editorial comment. If I could just, Shader mentioned, we're stuck with the AEDPA for better or worse, I would submit that it's we're not stuck with it, that it is law, and it is for the better. Well, we thought the Supreme Court was on a rescue mission just a minute ago. We all have our points of view, I guess we do. Thank you. Thank you. Those are not the kind of editorial comments that I think are appropriate. Just a last comment. It seems that maybe Nebbias' case is ripe for reconsideration by this Court. Well, maybe. And that we should think about the status of the system. So thank you. Thank you, Counsel. Bush v. Plywood was submitted to your jury.
judges: Kleinfeld, Fisher, Shadur